CHARLIE H. HOOPER *v.* YOUNG SALES CORPORATION, etc., *et al.*

(*Nashville,* December Term, 1955.)

Opinion filed March 9, 1956.

PAUL F. BUMPUS, of Nashville, for appellant.

H. T. FINLEY and R. B. PARKER, JR., both of Nashville, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a workmen's compensation case, wherein the issues are (1) the extent of a permanent disability of Mr. Hooper's body as a whole, and that extent having been ascertained, (2) the proper formula for determining the amount of compensation to be paid.

Mr. Hooper was thirty odd years old. His occupation, since getting out of the army, has been confined entirely to that of roofing houses. He was injured while so engaged. He says that because of those injuries he will not be able to do that type of work again; hence, since this is the only work which he, a man of little education, knows how to do, the Court should have found that the permanent disability to his body is total rather than partial.

Roofing is a work which principally involves physical labor, though it be, to some extent, skilled labor. Logically, it would not seem to follow that Mr. Hooper is totally disabled merely because the injuries received were such as to prevent him from engaging in that particular physical labor which roofing requires.

In addition, there is substantial evidence that Mr. Hooper's inability to do roofing is not total. The testimony of Dr. Sayers is that "by a system of re-education of his injured arm" he could, in this doctor's opinion,

"do the work that is required of a roofer", and "still be able to make a living with it".

After Dr. Ashby gave it as his opinion that Mr. Hooper's disability was between 50% and 55% there appears the following:

"Q. Doctor, in estimating this man's disability you do take into consideration that he is a skilled laborer, in contrast to common laborer? A. I am thinking about the type of work which he was doing, and would ordinarily be doing in his work as a skilled laborer. However, in my estimate it seems to me that those things apply to both."

Three doctors testified. They varied in their esimates of Hooper's bodily disability from a low of 40% to a high of 58%. The Chancellor found it to be 50%. Therefore, this Court must consider this appeal on the basis of a 50% permanent partial disability of Mr. Hooper's body as a whole.

The code section by which compensation must be determined in a disability of this character is as follows:

"All other cases of permanent partial disability not above enumerated shall be apportioned to the body as a whole, which shall have a value of three hundred (300) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury. Compensation for such permanent partial disability shall be subject to the same limitations as to maximum and minimum as provided in subsection (a)." Section 50-1007(c), last paragraph, T. C. A.

The limitations in sub-section (a) as to maximum and minimum amounts payable are: 60% of the injured employee's average weekly wage at the time of the injury,

subject to a maximum of $28 and a minimum of $12 per week. Section 50-1007(a), T. C. A.

At the time Hooper received this injury his average weekly wage was $67.30. He had a temporary total disability of 23 weeks. Since 60% of $67.30 is more than $28, the Chancellor was of the opinion that Hooper's award must be calculated upon a basis of $28 per week. And, since Hooper had been paid temporary total disability for 23 weeks, the Chancellor concluded that the award must be calculated upon a basis of 277 weeks; that is, the maximum of 300 weeks was credited with this 23 weeks.

In reaching a final conclusion as to the amount of the award, the Chancellor's method of computation was to take 50% (the amount of the disability) of $28 (the maximum weekly wage permissible) with the result that the award is a payment of $14 per week for a period of 277 weeks.

Hooper's insistence is that (1) since the award is to be calculated upon the basis of 60% of the employee's average weekly wage, the Chancellor should have proceeded on the basis of 60% of $67.30 (his average weekly wage at the time of the injury). Such percentage of such wage is $40.38; (2) that since his disability was 50%, the Chancellor should have taken 50% of this $40.38. Mr. Hooper's reasoning is that since his disability is 50% he is entitled each week to 50% of 60% of his average weekly wage until such 50% of such 60% reaches the maximum figure of $28 per week. If this method of computation is correct Mr. Hooper's weekly payment should be $20.19 per week (50% of $40.38); and (3) that he is entitled to such $20.19 for each of 300 weeks because in a disability of this character the temporary total disability, says Mr. Hooper, is an amount which the statute allows *in addition*

*to* the amount to which he is entitled for permanent partial disability.

A strong argument is made in support of Mr. Hooper's insistences (1) and (2). However, the Court is of the opinion that the pertinent statutory provision, Section 50-1007(a), T. C. A., is not susceptible of that construction. That section provides that the injured employee shall receive "sixty per cent (60%) of the average weekly wages * * * subject to a maximum compensation of twenty-eight dollars ($28.00) per week * * *." The natural construction of this language is that the employee is entitled to 60% of his average weekly wage until such 60% thereof reaches the maximum of $28 per week.

It is next necessary to determine the number of weeks for which Mr. Hooper is entitled to this $28. This is controlled by the provision in the last paragraph of Section 50-1007(c), T. C. A., hereinbefore quoted. That paragraph gives the body as a whole a value of 300 weeks in determining the amount of an award for a permanent partial disability of such body. The exact wording is "* * * shall be apportioned to the body as a whole, which shall have a value of three hundred (300) weeks."

If the body as a whole has a value of 300 weeks, then, in calculating the amount payable for a permanent loss of a part of that body, or its use, it would necessarily follow that when the loss is 50% of the body, the loss suffered by the employee, and for which he is entitled to compensation, is 150 weeks. So, temporarily eliminating consideration of whether a credit should be taken for the weeks of temporary total disability, the result is that Mr. Hooper is entitled to be paid $28 per week for 150 weeks.

While the conclusion just stated amounts in dollars and cents to the same as when calculated at $14 per week for 300 weeks (the Chancellor's method of computation),

there is, this Court thinks, a difference which should be noticed, to-wit, it is one thing for an injured employee who was accustomed to earning substantial wages to receive $28 per week for the support of self and family until he and his family become adjusted to his altered conditions, but quite a different, and much more detrimental thing for him and his family to receive $14 per week during a longer period of time.

The next question is whether this 150 weeks should be credited with payments made for temporary total disability. The statute applicable to Mr. Hooper's disability, and codified as Section 50-1007(c), T. C. A., is Section 2(e) of Chapter 111 of the Public Acts of 1953. As so codified, it has been quoted hereinbefore.

At the time of the enactment of this Chapter 111, 1953 Acts, and for many years prior thereto, there was, as there now is, a schedule in which is listed the various members of the human body. That schedule fixes a value in weeks for each such member, and thereby the basis for calculating the amount of recovery in the event of the loss in whole or in part of such member, or its use. For instance, the first member of the body mentioned in this schedule is: ''For the loss of a thumb, sixty per cent (60%) of the average weekly wages during sixty (60) weeks.'' A long list of such members, and the value thereof in terms of weeks follows. See Section 6878(c) of the 1950 Code Supplement and Section 50-1007 (c), T. C. A.

·. The injury which results in whole or part loss of a member, or its use, does in many instances also result in the temporary total disability of that employee. The code section under discussion provides for payment of compensation to this employee during the period of such temporary total disability. Then the paragraph which immediately precedes the aforesaid schedule of members

expressly provides that "in addition to the foregoing" compensation for temporary total disability the injured employee shall receive the amount of compensation specified in the schedule for the total or partial loss of a given member, or its use. Responsive to this legislative mandate, our Courts have consistently held that the employee is entitled to the value fixed in the schedule for the loss in whole or in part of a given member in addition to the compensation received because of total temporary disability.

However, prior to the enactment of Chapter 111, Public Acts of 1953, no value of the body as a whole was fixed in order to furnish a basis for determining the compensation to be paid for the permanent partial loss of that body, or its use. Instead, the statute provided that the compensation be calculated upon the basis of the difference between earning capacity before and after the injury. Section 6878(c) of the Code Supplement, last paragraph.

This 1953 statute struck this last paragraph of Section 6878(c) and inserted the provision hereinbefore quoted, whereby the body as a whole is given a specific value in weeks in the same manner that a value in weeks is given in the schedule to the various members of the body. Section 50-1007(c), last paragraph, T. C. A.

Notice has been taken of the fact that the Legislature provided that the value fixed in its schedule for the loss or partial loss of the use of a member of the body, such as the arm or eye, etc., shall be in addition to the compensation received for temporary total disability. The Legislature has now fixed in identically the same terms a value to that body as a whole as the basis for determining the amount of compensation to be received for permanent partial loss of its use.

It follows logically that the Legislature had the same intention in fixing a value for the partial loss of the use of the body as it had in fixing a value for the partial loss of the use of a member of the body. To otherwise conclude would attribute to the Legislature an inconsistency not revealed by the 1953 amendment, or by the provisions of the Workmen's Compensation Statute wherein is spelled out the formula for determining the amount of compensation in cases of permanent partial loss of the use of a member of the body or partial loss of the use of the body as a whole.

■ This Court concludes, therefore, that the weeks for which Mr. Hooper was paid compensation by reason of total temporary disability are not to be deducted from the number of weeks for which he is entitled to compensation because of permanent partial disability of 50% to his body as a whole.

■ Finally, it is insisted by Mr. Hooper that the evidence without contradiction is to the effect that the period of total temporary disability is 31 weeks, rather than the 23 weeks found by the Chancellor. The brief cites certain pages of the Bill of Exceptions in support of this insistence. We think, however, that counsel miscontrues that testimony. It is to the effect that Hooper did not get a job until 31 weeks after he was injured. But this evidence does not permit the inference that he was totally disabled for a period of 31 weeks. The only evidence in the record is that compensation for a temporary total disability was discontinued after 23 weeks. There is no evidence that such discontinuance was not justified. Hence, the Chancellor's finding on this must be upheld.

The decree of the Chancellor will be modified so as to hold that Mr. Hooper is entitled to a compensation of $28 per week for a period of 150 weeks without any deduction

for compensation received by reason of temporary total disability. All costs will be adjudged against appellees. As so modified, the decree will be affirmed and the cause remanded for any further proceedings which may be appropriate.